**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4188-19

I.P.,[1]

    Plaintiff-Appellant,

v.

S.B.,

    Defendant-Respondent.

_____

        Submitted September 13, 2021 – Decided September 24, 2021

        Before Judges Sabatino and Mayer.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2631-16.

        Schenck, Price, Smith & King, LLP, attorneys for appellant (William C. Dodd, of counsel and on the briefs).

        S.B., respondent pro se.

---

[1] We refer to the parties by initials to protect the privacy of their children. R. 1:38-3(d), -3(f)(6).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff I.P. appeals from a June 15, 2020 order denying her motion for reconsideration. We affirm in part and remand in part.

The parties married in 2001 and have two children. They divorced on October 13, 2016. A Divorce Settlement Agreement (Agreement) was annexed to their Judgment of Divorce (JOD).[2] The Agreement addressed the parties' various obligations after the dissolution of the marriage, including work-related childcare and child support obligations.

Under the Agreement, defendant S.B. "waive[d] his claim for alimony in exchange for certain offsets affecting the child support and childcare obligations." Regarding child support, the Agreement provided:

> The parties agree that initially the child support to be paid by [defendant] . . . will be based on $90,000 annual income. [Defendant] agrees to have a review of his income in 12 months from the date of this agreement.

> As of January 1, 2018, [defendant] agrees to pay child support based on the greater of (a) his actual income in 2017 or (b) an imputed income of $105,000. The child support amount shall be recalculated in January 2018.

---

[2] Because the parties are licensed attorneys, they represented themselves during the divorce proceedings.

. . . .

> [Defendant] will make a payment to [plaintiff] each week in arrears, by Friday of the week for which the payment is due. The first payments . . . shall be for the first two weeks of October, or $328. Thereafter, a check shall be cut each Friday in the amount of $164 until March 31, 2017, at which time payments shall increase to $322 per week for the period from April 1, 2017 to December 31, 2017.

Regarding childcare, the Agreement provided:

> Childcare will be included in the weekly child support payments based on the NJ Guidelines and agreed upon monthly childcare amount of $2,000.

> . . . .

> In addition, [plaintiff] agrees to remove childcare costs from the Guidelines calculation until March 31, 2017 (or the next 6 months of support payments).

> Beginning with the April 1, 2017 child support payment, the Guidelines calculation shall include work related childcare expenses of $2,000 per month, so that [defendant] will be paying $322 per week in child support until reevaluation of the child support amount [on] January 1, 2018.

The Agreement also addressed dependent tax credits, providing:

> [Plaintiff] shall apply the dependent exemptions for both children to her 2016 tax return. As of 2017, each parent will claim one child as a dependent on their tax returns.

A-4188-19

On December 17, 2019, plaintiff filed a motion to compel defendant's 2017 "income information," recalculate child support "effective [to] January 1, 2018," and recover over $19,000 in child support arrearages and other unpaid supplemental expenses.

Defendant objected to plaintiff's motion and filed a cross-motion addressing his child support obligation and payment of childcare expenses. Defendant also sought to claim his son as a dependent on his tax return consistent with the Agreement.

Defendant argued his income fluctuated after the JOD. In 2017 and 2018, defendant held high paying legal positions, but had difficulty securing lucrative work after 2018. In 2018, defendant's tax return reflected an income of $159,000. According to his 2019 tax return, defendant earned $105,000. In 2020, defendant earned $80,000. Thus, for 2020, the judge imputed income in the amount of $105,00 for calculating defendant's child support in accordance with the Agreement.

In a February 7, 2020 order, the Family Part judge ruled on the motion and cross-motion. The judge held "effective February 1, 2020, [d]efendant's child support obligation is hereby modified to $228 per week, . . . [d]efendant

4

shall directly pay for 44% of all work-related child-care expenses."[3]  The judge noted the Agreement required the parties to recalculate child support in January 2018, but they did not do so.  The judge denied plaintiff's motion to compel defendant to pay $19,238.21 in "supplemental expenses."  Further, he compelled plaintiff to provide "all information regarding [p]laintiff's *au* pair . . . and any other work-related childcare information."  In addition, the judge ordered plaintiff to file an amended 2018 tax return, listing only one child as a dependent.

Plaintiff moved for reconsideration of the February 7, 2020 order.  She also moved to compel defendant to pay arrears of $12,522 and increase "[d]efendant's child support obligation" to "$446 per week, inclusive of defendant's contribution to childcare."

Defendant filed opposition and a cross-motion.  In his cross-motion, defendant sought to enforce the February 7 order or, in the alternative, modify defendant's child support obligation "based on [d]efendant's changed circumstance, specifically, a substantial reduction in income and current unemployment."

---

[3] In arriving at the $228 child support amount, the judge applied the New Jersey Child Support Guidelines and defendant's three-year average salary of $143,166.33.

After hearing oral argument on the motion for reconsideration, the judge acknowledged "there was a better approach [to recalculating child support] in light of the proofs . . . [and] the history of the parties" and agreed to review the "actual incomes for the most recent years . . . to inform the child support calculation and not use a blended income for . . . defendant going forward."  The judge explained using defendant's average, blended income, rather than actual income, would "set[] him up and the parties up for additional litigation."  The judge required plaintiff to provide additional information to calculate actual work-related childcare expenses.

In a June 15, 2020 order, the judge denied plaintiff's request to compel defendant's payment of arrears.  Further, relying on defendant's actual income and the language in the Agreement, the judge ordered defendant to pay $178 weekly in child support effective February 1, 2020.  He also compelled plaintiff to provide information regarding her work-related childcare expenses because the children were older and such expenses tended to decrease as children aged.

In recalculating the weekly child support amount, the judge partially relied on defendant's imputed income of $105,000 in accordance with the parties' Agreement.  However, he specifically found defendant's income in 2018 and 2019 was higher or equivalent to the salary imputed to him under the

Agreement and determined "[t]he children are entitled to share in defendant's success." The judge also held "if [d]efendant has not yet paid his contractual share, then the parties should perform a reconciliation." Further, he ordered defendant to pay thirty-six percent of plaintiff's work-related childcare costs and fifty percent of the children's supplemental expenses. Absent additional documentation related to plaintiff's work-related childcare, the judge concluded plaintiff's past work-related childcare costs were much lower than contemplated under the Agreement and, therefore, defendant overpaid for work-related childcare since 2018.

On appeal, plaintiff argues (1) the judge erred by retroactively reducing defendant's child support obligation; (2) the judge "rewrote the parties' divorce settlement agreement to remove work-related childcare from defendant's child support without a finding of changed circumstances"; (3) the judge failed to consider defendant's salary history and earning capacity in recalculating child support; and (4) the judge erred in compelling her to file an amended 2018 tax return. We reject these arguments.

Our review of a Family Part judge's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's fact-finding is "binding on appeal when supported by adequate, substantial, credible evidence." Id. at

A-4188-19

411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

We first consider plaintiff contention the judge violated the anti-retroactivity statute, N.J.S.A. 2A:17-56.23(a), by reducing defendant's child support obligation. Here, the parties entered into a written agreement expressly requiring the recalculation of child support in January 2018.[4] "An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute." Quinn v. Quinn, 225 N.J. 34, 45 (2016). "It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear." Ibid. "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid. The parties to a divorce

---

[4] At the time the parties signed the Agreement, their future earnings were unknown. Thus, either party had the ability to benefit from the agreed upon recalculation of support obligations.

settlement "may contract to disregard settled law . . . including the New Jersey Child Support Guidelines." O.P. v. L.G-P., 440 N.J. Super. 146, 155 (App. Div. 2015).

N.J.S.A. 2A:17-56.23(a) provides:

> Any payment or installment of an order for child support, or those portions of an order which are allocated for child support, . . . shall be fully enforceable and entitled as a judgment to full faith and credit and shall be a judgment by operation of law on and after the date it is due . . . . No payment or installment of an order for child support, or those portions of an order which are allocated for child support . . . shall be retroactively modified by the court except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was mailed either directly or through the appropriate agent.

Under the statute, the judge acknowledged defendant's child support could not be reduced retroactively. However, the statute permits such modification from the filing date of the notice of motion. See Diehl v. Diehl, 389 N.J. Super. 443, 452 (App. Div. 2006).

Based on the filing date of defendant's second cross-motion for modification of child support, the judge ordered the modified amount of $178 weekly would be effective on February 1, 2020. Therefore, the judge's

modification of child support, effective as of the filing date of defendant's motion, was not a violation of the anti-retroactivity statute.

After recalculating weekly child support, the judge recommended the parties perform a "reconciliation" to determine the amount, if any, defendant owed based on the recalculation. The judge did not determine the amount of arrears owed by defendant.

Rule 5:7-4(c) provides

> when the payment of support is ordered, the judge . . . as appropriate, shall calculate the child support obligation, payment on arrears, and total arrears owed so that these amounts will be known to the parties before they leave court. When establishing arrears, findings shall be made on (1) any direct payments made by the obligor to the obligee between the effective date of the order and the date of the hearing, on a showing of credible proof, and (2) the amount and frequency of regular payments to be made toward the arrears.

Under this Rule, a judge is required to set forth factual findings in calculating arrears and establishing a repayment schedule. Because the judge recommended the parties perform a reconciliation rather than conduct his own analysis of arrears in accordance with Rule 5:7-4(c), we remand the matter to the Family Part for the judge to address any arrears and establish a payment schedule for such arrears.

10

We next consider plaintiff's claim the judge improperly rewrote the Agreement to eliminate defendant's obligation to pay work-related childcare expenses. We reject this contention.

The Agreement provides:

> Beginning with the April 1, 2017 child support payment, the Guidelines calculation shall include work related childcare expenses of $2,000 per month, so that [defendant] will be paying $322 per week in child support until reevaluation of the child support amount [on] January 1, 2018.
>
> [(emphasis added).]

The Agreement contemplates a reevaluation of childcare costs as part of the child support recalculation. Thus, the judge gave effect to the parties' Agreement in his reevaluation of those expenses.

Plaintiff spent a total of $4,237.76 on work-related childcare expenses in 2018, well below the $2000 per month set forth in the Agreement entered into when the children were younger. In 2019, after-school care costs incurred by plaintiff on behalf of the children were $465 monthly. As the judge noted, when "children grow up, costs typically go down."

Plaintiff argued she incurred significant work-related childcare costs in 2019 and 2020. Prior to recalculating child support, the judge requested proof of all work-related childcare expenses. However, plaintiff failed to provide

evidentiary support for those claimed expenses. Therefore, the judge properly excluded such expenses in the absence of any supporting documents.

We next review plaintiff's contention the judge erred by requiring her to file an amended 2018 tax return and allowing defendant to receive a tax credit. Plaintiff argues defendant failed to satisfy his support obligations under the Agreement and should not be eligible to claim a tax credit. Again, we disagree.

Marital agreements are akin to other contract agreements, and "when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn, 225 N.J. at 45.

Here, the parties' Agreement unequivocally provides "[a]s of 2017, each parent will claim one child as a dependent on their tax returns." Contrary to the terms of the Agreement, plaintiff declared both children as dependents on her 2018 tax return. We are satisfied the judge properly enforced the Agreement by compelling plaintiff to file an amended 2018 tax return claiming only one child as a dependent.

The remainder of plaintiff's arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-4188-19